UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Daniel Moriarty,
    Claimant

    v.                                    Civil No. 07-cv-342-SM
                                          Opinion No. 2008 DNH 158

Michael J. Astrue, Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Daniel T. Moriarty moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act").  He says the Administrative Law Judge ("ALJ") erred in concluding that he was not disabled prior to the date on which his insured status expired.  The Commissioner objects and moves for an order affirming his decision.

For the reasons set forth below, this matter is remanded to the ALJ for further proceedings.

**Factual Background**

I.   Procedural History.

        Mr. Moriarty is a veteran of the Vietnam War.  He served in
the military from 1968 to 1970.  Among other things, he served as
an infantry point man for approximately six months, and was
highly decorated for his military service.  Although the precise
onset date of his illness is unclear (and is at the core of this
matter), the record amply demonstrates that he suffers from post-
traumatic stress disorder ("PTSD") and its chronic symptoms,
including anxiety, depression, nightmares and sleep disturbances,
flashbacks, social isolation, recurrent recollections of
traumatic events, and panic attacks.

        For reasons that are neither clear nor material to the
issues presented, claimant did not seek treatment for his illness
until at least 1976, when he says he had an anxiety attack while
living in the State of Washington.  The hospital at which he says
he obtained treatment, however, was unable to locate a record of
that treatment.  The earliest extant treatment records pertaining
to claimant's illness are from the Veterans Administration
Hospital in Manchester, New Hampshire, dating to 1981 –
approximately one and one-half years after his insured status
expired.  Since 1981, however, records of his medical treatment

are substantial, as is evidence supporting the conclusion that he is currently disabled (though the court need not, and does not, resolve that issue). For example, the Veterans Administration recognizes that he suffers from a 100 percent service-related disability.

In October of 1993, claimant filed an application for disability insurance benefits under Title II of the Act. An ALJ denied that application and claimant did not appeal (it is unclear whether claimant was represented by counsel at the time). Claimant filed a subsequent application for disability insurance benefits in 2000, again alleging disability in 1979. That application was also denied and claimant's request for a hearing before an ALJ was denied on grounds of res judicata. For reasons that are not material to this proceeding, all agree that the denial of claimant's request for a hearing constituted error.

On June 24, 2004, claimant filed another application for disability insurance benefits, alleging that he had been unable to work since January 1, 1979, due to PTSD, anxiety, a panic disorder, and depression. His application was denied. He then requested, and was granted, a hearing before an ALJ. Accordingly, on April 4, 2007, claimant and his attorney appeared

before an ALJ, who considered claimant's application de novo.  On May 10, 2007, the ALJ issued a written decision, finding that claimant did not suffer from a medically determinable impairment prior to his date last insured (September 30, 1979).  Consequently, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the expiration of his insured status.

Claimant sought review of the ALJ's decision by the Appeals Council, which denied his request.  As a result, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.  Claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a remand to the ALJ for further proceedings.  Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 9).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 10). Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is

part of the court's record (document no. 11), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

I.   Properly Supported Findings by the ALJ are
     Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1]  See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary

---

[1]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

position.  See Tsarelka v. Secretary of Health & Human Services,
842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the
[Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence.").  See also Rodriguez v. Secretary of
Health & Human Services, 647 F.2d 218, 222–23 (1st Cir. 1981).

     In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence.  See Burgos Lopez v. Secretary
of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)
(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769
(citation omitted).  Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly where those
determinations are supported by specific findings.  See
Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,
195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &
Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146–47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  <u>See</u> <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810–11 (D. Mass. 1982).

If the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.

See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. 1512(g).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)   whether the claimant is engaged in substantial gainful activity;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a listed impairment;

(4)   whether the impairment prevents the claimant from
performing past relevant work; and

(5)   whether the impairment prevents the claimant from
doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if
his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's
motion to reverse and the Commissioner's motion to affirm his
decision.

**Discussion**

I.   Background – The ALJ's Findings.

In concluding that Mr. Moriarty was not disabled within the
meaning of the Act, the ALJ first determined that he had not been
engaged in substantial gainful employment from his alleged onset

date of January 1, 1979, through his date last insured of
September 30, 1979.  Next, the ALJ concluded that "the objective
medical evidence contained in the record does not establish the
existence of a medically determinable impairment through the date
last insured that could have reasonably been expected to produce
the claimant's symptoms."  Administrative Record ("Admin. Rec.")
at 19-20.  Accordingly, at step two of the five-step sequential
analysis, the ALJ concluded that claimant was not disabled, as
that term is defined in the Act, at any time from his alleged
onset date through his date last insured.

II.  Claimant's Mental Impairments.

On appeal, claimant raises two related issues.  First, he
says that, at step two of the sequential analysis, the ALJ
improperly concluded that he does not suffer from a severe mental
impairment.  Next, he asserts that the ALJ erred in concluding
that he was not, as of the date on which his insured status
expired (September 30, 1979), disabled as a result of that mental
impairment.  The problem presented in this case is this: despite
claimant's assertion that the symptoms of his PTSD rendered him
disabled as of January, 1979, and despite his recollection that
he was hospitalized as a consequence of those symptoms at least
once in the mid-1970's, there are no medical records of his

10

having obtained treatment prior to the date on which his insured status expired.  Accordingly, the ALJ concluded:

> The undersigned notes that in order for an impairment to be medically determinable it must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  It cannot be determined based only on an individual's recollections or subjective complaints.  Thus, regardless of how genuine the claimant's complaints may appear to be, when there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, a finding of not disabled is required at step two of the sequential evaluation process.  Such is the case in this instance.

Admin. Rec. at 19 (citations omitted).

In response, claimant says the lack of objective medical evidence of a mental impairment prior to his date last insured is not fatal to his application for disability benefits.  In support of that position, claimant says that while objective medical evidence is necessary to prove that his impairments are, in fact, disabling, such evidence is not necessary to establish the onset date of his disability.  And, says claimant, the ALJ erred by, first, failing to determine whether he currently suffers from a severe mental impairment, and then by failing to determine the onset date of that impairment.

As to the first of those two steps, claimant asserts that
there is ample medical evidence in the record to support his
claim that he is currently disabled by virtue of his PTSD.  <u>See</u>
Claimant's memorandum (document no. 9-2) at 6 n.4.  The court
agrees.  For example, as early as 1982, Dr. Grimm, a psychologist
on staff with the VA Hospital opined that:

> The evidence for a severe anxiety disorder is clear and
> persuasive.  The fact that the [patient's] premorbid
> functioning was excellent, that onset of symptoms was
> precipitous and not associated with any temporally
> appropriate stressor, and that imperfectly repressed
> trauma related to the stresses of combat have been
> recovered through hypnosis all point to a diagnosis of
> post-traumatic stress disorder, delayed, chronic.
> Indeed I have seldom seen a case of this disorder which
> so clearly met diagnostic criteria.

Admin. Rec. at 308.  <u>See also</u> Mental Residual Functional Capacity
Questionnaire completed by Dr. Perla Kissmeyer, claimant's
treating psychiatrist at the VA Hospital, Admin. Rec. at 452.  If
the opinions offered by Dr. Grimm and/or Dr. Kissmeyer are
credited, a finding that claimant suffers from a severe
impairment - that is, PTSD - is all but compelled.[2]

---

[2]     Neither claimant's stray comment, as reported by a clinical
social worker in 1981, that he had been "doing quite well up
until December of [1980]" Admin. Rec. at 333, nor the fact that
Dr. Kissmeyer opined that his global assessment of functioning
was in the 55 to 65 range, substantially undermines the evidence
that he is disabled.  Those points are well-addressed in
claimant's memoranda and need not be repeated.

Moreover, the precedent in this area unmistakably establishes that step two in the sequential analysis is a "de minimis screening step," designed to filter out "groundless claims" filed by individuals whose impairments have no more than a minimal effect on their ability to work.  <u>McDonald v. Secretary of Health & Human Services</u>, 795 F.2d 1118, 1124 (1st Cir. 1986).  <u>See also</u> <u>Timmons v. Apfel</u>, 1999 WL 1327393, at *5 (D.N.H. Aug. 17, 1999) ("Although the burden lies with the claimant, he need only make a de minimis showing to surpass a denial of benefits at step two.  The step-two requirement is merely a threshold, designed to do no more than screen out groundless claims.") (citations and internal punctuation omitted).  <u>See generally</u> SSR 85-28 (Nov. 30, 1984) ("Great care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.").

Nevertheless, the problem identified by the ALJ remains: notwithstanding claimant's assertion that his mental impairments were disabling on or before September 30, 1979, and despite the retrospective diagnosis offered by claimant's treating

13

psychiatrist that he was disabled by reason of his PTSD by 1979 and possibly as early as 1976, <u>see</u> Admin. Rec. at 158 and 449, there are no medical records or laboratory findings from the relevant period to support such a finding.  Thus, the question presented by claimant's appeal is whether the absence of medical records for the relevant temporal period is necessarily fatal to his claim.  It is not.

As the ALJ correctly noted, objective medical evidence is necessary to establish the existence of a disabling impairment. <u>See, e.g.</u>, 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").  <u>See also</u> Social Security Ruling ("SSR") 96-4p, 1996 WL 374187 at *1 (July 2, 1996) ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.").  Importantly, however, if a claimant is found to suffer from a disabling impairment, objective medical evidence, while preferred, is <u>not</u> essential to resolving the onset date of that disability.

14

Social Security Ruling 83-20, entitled "Titles II and XVI: Onset of Disability," makes clear that there are three factors that must be considered when determining the onset date of a claimant's disability: "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity."  SSR 83-20, 1983 WL 31249 at *2 (1983). Nowhere in the SSR is there any suggestion that the absence of medical records establishing an onset date is fatal to an individual's disability claim.  In fact, the SSR provides just the opposite, specifically noting that in some cases it may be necessary to infer the onset date of a claimant's disability from non-medical evidence.

> In some case, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in [the] file and additional relevant medical evidence is not available, it may be necessary to explore other

> sources of documentation.  Information may be obtained
> from family members, friends, and former employers
> . . .  to furnish additional evidence regarding the
> course of the individual's condition.

SSR 83-20, 1983 WL 31249 at * 3 (emphasis supplied).

In light of the foregoing, the ALJ's observation that "the medical records establish that he did not complain of symptoms of mental illness until nearly 2 years after he was last insured," Admin. Rec. at 19, while likely correct, is not dispositive of claimant's application for disability benefits.  The first step in the inquiry is to determine whether claimant is _currently_ disabled.  If so, the next step is to determine the onset date of that disability.  And, critically, the absence of medical evidence prior to the expiration of claimant's insured status is not dispositive of his assertion that he suffered from a disabling mental impairment during that period.

Given the absence of objective medical findings during the relevant period, prior to rejecting claimant's application, the ALJ should have considered (and discussed in his decision) the other relevant factors that are set forth above (e.g., the claimant's allegations; the testimony of friends, family, co-workers, and former employers about claimant's condition and its

16

effect on his ability to engage in substantial gainful activity;
and the claimant's work history).  See SSR 83-20, 1983 WL 31249
at *2-3.  Additionally, the ALJ probably should have called upon
a medical consultant to assist him in inferring the likely onset
date of claimant's impairment(s).  See Id. at *3.  See also
Deblois v. Secretary of Health & Human Services, 686 F.2d 76, 81
(1st Cir. 1982) (discussing the ALJ's obligation to consult
medical experts to determine the onset date of claimant's war-
related serious mental disorder); Ryan v. Commissioner, 2008 DNH
148, slip op. at 17 (D.N.H. Aug. 21, 2008) ("Courts agree that
SSR 83-20 ordinarily requires an ALJ to consult a medical advisor
when the ALJ has made a finding of disability but the onset of
the disability must be inferred from ambiguous evidence.")
(citations omitted); Hurd v. Commissioner, 2008 DNH 044, 2008 WL
510148 at *8 (D.N.H. Feb. 25, 2008) ("Determining the onset date
of a disabling impairment is a complex issue that generally
should be made after consulting medical experts."); Mason v.
Apfel, 2 F. Supp.2d 142, 150 (D.Mass. 1998) ("Where, as SSR 83-20
directs, the onset date must be inferred from the medical and
other evidence describing the history and symptomatology of the
disease process, the administrative law judge is required to
retain the assistance of a medical advisor.  Without that
assistance, the administrative law judge does not have an

17

adequately developed record upon which to base his decision.")
(emphasis supplied and citation omitted).

Parenthetically, the court notes that the Commissioner
asserts that "SSR 83-20 does not apply" to this case because a
"condition precedent to the application of SSR 83-20, that
claimant had been found disabled at some later point, does not
exist in this case."  Respondent's memorandum (document no. 10-2)
at 10.  This court (Barbadoro, J.) has, however, expressly
rejected that proposition, concluding that there is:

> no support for the Commissioner's position either in
> the language of SSR 83-20 or in the underlying policies
> that the ruling was designed to serve.  SSR 83-20
> straightforwardly states that an ALJ "should call on
> the services of a medical advisor when onset must be
> inferred."  It does not authorize ALJs to circumvent
> the ruling by withholding a finding on present
> disability and denying the claim based upon a
> determination that the claimant was not disabled as of
> her date last insured.  In short, there is no support
> in the text of SSR 83-20 for the Commissioner's
> position.
>
> The Commissioner's interpretation of SSR 83-20 is also
> inconsistent with the public policy that the ruling was
> intended to serve.  As the ruling notes, an onset date
> finding will often be determinative of a claim for
> benefits.  Such findings can be extremely difficult to
> make when a claimant suffers from a progressive
> impairment such as Huntington's disease that is not
> diagnosed until long after the alleged onset date of
> the claimed disability.  This difficulty does not
> disappear when an ALJ bypasses a determination of
> present disability and instead denies a DIB claim based

> on a finding that the claimant was not disabled as of
> her date last insured.  Accordingly, there is no good
> reason why SSR 83-20 should be limited to cases in
> which the ALJ makes a determination of disability
> before addressing the onset date of disability.

Ryan, 2008 D.N.H. 148, slip op. at 18-19.  That reasoning applies
with equal force in this case.


### Conclusion

Having carefully reviewed the administrative record and the
arguments advanced by both the Commissioner and claimant, the
court concludes that there is not substantial evidence in the
record to support the ALJ's determination that claimant is not
entitled to disability benefits.  The ALJ erred in concluding
that because there is no objective medical evidence prior to
September 30, 1979, to support a medically determinable mental
impairment, he was precluded from finding that claimant was
disabled prior to that date.


In resolving claimant's application for disability benefits,
the ALJ should first determine whether claimant is presently
disabled.  Then, if he concludes that claimant is disabled, he
should determine the onset date of that disability.  See, e.g.,
Nelson v. Commissioner of Social Security, 2005 WL 1231500 at *2

(D. Me. May 24, 2005) ("The administrative law judge did not follow this procedure.  Rather than determining that the plaintiff was disabled as of the date of decision and then proceeding to fix the date of onset, he erroneously assessed whether, for purposes of SSD, she was disabled as of her DLI. This was a regrettable error.").

Finally, the court notes that the lack of objective medical evidence of a disabling impairment prior to the expiration of claimant's insured status does not necessarily doom his claim for disability benefits.  When objective medical evidence is lacking, the ALJ must evaluate other evidence to infer the onset date of a claimant's disability.  See generally SSR 83-20.  In this case, such evidence takes the form of claimant's testimony and the professional opinions of his treating physicians (at least one of whom – Dr. Kissmeyer – has opined that claimant was totally disabled by reason of his PTSD prior to September of 1979).  And, as noted above, if the ALJ concludes that claimant is presently disabled, he should give serious consideration to employing the services of a qualified medical consultant to assist him in inferring the date on which the symptoms caused by claimant's PTSD likely became disabling.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is granted to the extent it seeks remand to the ALJ for further proceedings.  In all other respects, claimant's motion is denied.  The Commissioner's motion to affirm his decision (document no. 10) is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

August 28, 2008

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.

21